**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|                                              |     |                              |
|----------------------------------------------|-----|------------------------------|
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
| In re AFFILIATED COMPUTER SERVICES           | §   | Master File No. 3:06-CV-1110-M |
| DERIVATIVE LITIGATION                        | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |
|                                              | §   |                              |

**<u>MEMORANDUM ORDER AND OPINION</u>**

Before the Court are Motions to Dismiss filed by Defendants Affiliated Computer Services, Inc. ("ACS"); J. Livingston Kosberg, Dennis McCuistion, Joseph P. O'Neill, and Frank A. Rossi (Defendants Kosberg et al.); Lynn Blodgett, David W. Black, Peter A. Bracken, John M. Brophy, Darwin Deason, William L. Deckelman, Jr., Henry Hortenstine, Clifford M. Kendall, and John Rexford (Defendants Blodgett et al.); Warren Edwards and Mark King; Jeffrey Rich; Cerberus Capital Management LP; and Supplemental Motions filed by Defendants Blodgett et al. and William L. Deckelman, Jr. Having considered all briefing on the issue and arguments made at the hearing held on the Motions on August 1, 2007, and for the reasons set forth below, the Court **DENIES** Motions filed by Cerberus and Black (individually) as moot, given that Plaintiffs have dismissed their claims against those Defendants, and **GRANTS** in part and **DENIES** in part the remaining motions, as indicated herein. The Court **GRANTS** Plaintiffs leave to amend their Complaint as indicated herein.

## Background

This case is a derivative action, brought on behalf of the shareholders of ACS on June 22, 2006, for the alleged backdating of stock options by various officers and directors of ACS. In their Amended Complaint filed April 6, 2007, Plaintiffs brought claims for violations of § 10(b), Rule 10b-5, § 14(a), § 16(b), and § 20(a) of the Securities Exchange Act of 1934, as well as state law claims for accounting, breach of fiduciary duties, abuse of control, mismanagement, constructive fraud, corporate waste, unjust enrichment, rescission, and breach of contract. These claims ("the backdating claims") arise out of Defendants' actions in allegedly causing, permitting, and/or concealing the backdating of stock option grants to ACS's directors and top executive officers; failing to properly investigate whether these grants were improperly made; and failing to require the grant recipients to disgorge the options and the resulting proceeds from their exercise. Plaintiffs also claim that ACS's directors breached their fiduciary duties by improperly pursuing a sale of the company in order to insulate themselves from liability for the claims alleged in this suit ("the buy-out claims"). Defendants filed motions to dismiss all of these claims.

## Prior Rulings

At the hearing held by this Court on August 1, 2007, Plaintiffs voluntarily dismissed without prejudice their claims against Defendant David Black, who is a Florida resident. Plaintiffs also voluntarily dismissed without prejudice their buy-out claims, which they had asserted against all Defendants. The motions of Defendants Kosberg et al., Blodgett et al., and ACS to dismiss Plaintiffs' buy-out claims are therefore **DENIED** as moot. Since the only claim asserted against Cerberus Capital Management LP was the buy-out claim, Cerberus is no longer a Defendant in the case. The Court therefore **DENIES** Cerberus Capital Management LP's Motion as moot. The Court also ruled at the hearing that Plaintiffs had properly pleaded demand futility, so Motions filed by Defendants Rich, King, and Edwards to dismiss Plaintiffs' Amended Complaint on that ground are **DENIED**. The Court

dismissed Plaintiffs' § 16(b) claims (Count IV) at the hearing, holding that exemptions pursuant to Rules 16b-3(d)(1) and (3) applied. The Court therefore **GRANTS** Edwards and King's Motion and Rich's Motion on that basis and dismisses Count IV of Plaintiffs' Amended Complaint.

<u>Section 10(b) and Rule 10b-5 Claims</u>

Plaintiffs assert claims under § 10(b) and Rule 10b-5, alleging that Defendants "engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material fact and/or omitting to state material facts necessary in order to make the statements made about ACS not misleading," and that the Defendants acted with scienter in doing so. Amended Complaint at ¶¶ 121, 123. In particular, Plaintiffs argue that Defendants made false or misleading statements in ACS's public filings, including the 1994 initial public offering, and in Forms 10-K405 and 10-K filed from 1996 to 2005. *Id.* at ¶¶ 56, 86. Plaintiffs allege that the Registration and Prospectus for the 1994 initial public offering contained material misrepresentations that the exercise price of incentive stock options was equal to the fair market value of ACS common stock. Plaintiffs allege that the 1996–2005 Forms 10-K contained false representations that ACS was continuing to use Accounting Principles Board ("APB") Opinion No. 25 in accounting for stock options, even though ACS had not taken a compensation expense since 1995 for "in-the-money" options, as required by APB No. 25. Plaintiffs also allege that the Defendants underreported ACS's tax liability each year from 2000 to 2005, resulting in tax penalties and interest that made reports of ACS's earnings, expenses, and liabilities materially false.

To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities: (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiffs relied (5) that proximately cause the plaintiffs' injury." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002). Under the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), if the Plaintiffs allege that a

Defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading," then "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Fifth Circuit has provided this summary test:

> [A] plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule 10b-5 securities fraud claim must, to avoid dismissal pursuant to Rule 9(b) and 15 U.S.C. §§ 78u-4(b)(1) & 78u-4(b)(3)(A):
>
> > (1) specify . . . each statement alleged to have been misleading, i.e., contended to be fraudulent;
> > (2) identify the speaker;
> > (3) state when and where the statement was made;
> > (4) plead with particularity the contents of the false representations;
> > (5) plead with particularity what the person making the misrepresentation obtained thereby; and
> > (6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent.

*ABC Arbitrage* at 350.

Under the PSLRA, a complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 551 (5th Cir. 2007). "Importantly, the Supreme Court recently stated that '[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.'" *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007)). A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510.

*A. Statute of Repose*

Plaintiffs' claims are based on option grants dated March 9, 1995; March 8, 1996; April 7, 1997; May 18, 1998; October 8, 1998; September 13, 1999; July 11, 2000; and July 23, 2002. For claims that accrued on or prior to July 30, 1999, the statutes of limitations and repose in effect prior to the Sarbanes-Oxley Act of 2002 (SOX) apply. Prior to SOX, "[l]itigation instituted pursuant to § 10(b) and Rule 10b-5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991). The statute of repose "serves as an absolute bar to any claims brought more than three years after accrual, regardless of when a plaintiff discovered or could have discovered that he had a claim." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 570 (D. N.J. 2002) (citing *Lampf* at 363). Congress extended the statutes of limitation and repose to two and five years, respectively, in SOX. 28 U.S.C. § 1658(b). The statutes of limitation and repose in SOX apply to cases filed after SOX's enactment date—July 30, 2002—if the claims were not time-barred as of that date under the prior law. *Margolies v. Deason*, 464 F.3d 547 (5th Cir. 2006). Defendants claim that all of the Plaintiffs' claims that accrued before the date of the last option grant of July 22, 2002, are time-barred.[1]

A claim under § 10(b) that is based upon the backdating itself accrues on the date the option grant was made. *In re Ditech Networks, Inc. Derivative Litig.*, 2007 WL 2070300, *7 (N.D. Cal. July 16, 2007). The Court rejects Plaintiffs' argument that the "continuing wrong" theory applies to toll limitations and repose until the last alleged misrepresentation was made. The Court finds that claims

---

[1]    At oral argument, counsel for Jeffrey Rich argued that claims accruing after July 21, 2001, but before SOX's July 30, 2002 enactment date, including any claims based on the option grant dated July 23, 2002, are also time-barred under the three-year statute of repose applicable before SOX. However, the Court denied this argument at the hearing and found the Fifth Circuit's reasoning in *Margolies v. Deason*, 464 F.3d 547 (5th Cir. 2006) applicable here, concluding that the five-year period of repose (and the three year statute of limitations) applies to claims filed after SOX's enactment date that were not time-barred as of that date, although based on facts that predated SOX. *Accord In re ExxonMobil Corp. Securities Litigation*, 500 F.3d 189 (3d Cir. Nov. 20, 2007).

based on all but the last option grant date—July 23, 2002—are time-barred under the statute of repose applicable to those claims, and therefore dismisses all of Plaintiffs' § 10(b) and Rule 10b-5 claims based on option grants made on all of the prior dates. As to the July 23, 2002 option, the Court does not conclude as a matter of law that it is barred by limitations.

Plaintiffs also base their § 10(b) and Rule 10b-5 claims on allegedly false statements made in the 1994 initial public offering and in Forms 10-K405 and 10-K filed from 1996 to 2005. A claim under § 10(b) and Rule 10b-5 based on dissemination of false financial statements accrues when the allegedly false or misleading statement was made. *Del Sontro*, 223 F. Supp. 2d at 573 (citing *Lampf*). Plaintiffs' claims based on false statements in filings made before July 30, 1999, are all barred under the three-year statute of repose applicable before SOX's enactment, and Plaintiffs' claims based on false statements in filings made between July 30, 1999 and June 21, 2001 (five years before suit was filed), are barred under the five-year statute of repose under SOX. Therefore, the only claims based on false statements which survive the statute of repose are those made on and after June 22, 2001. As to those which do survive, however, Plaintiffs have not pleaded with particularity what statements in those filings they allege to be false. In other words, it is unclear whether Plaintiffs allege that later filings contained false statements based on events not barred or whether they merely constitute "the issuance of a further financial statement that failed to correct the prior false statement" made in time-barred filings. *In re Ditech* at *8. Like the *Ditech* court, this Court would view the latter approach as one based on a continuing wrong theory, which this Court rejects, and this Court would find such claims time-barred. *See id.; In re Atmel Corp. Derivative Litig.*, No. 06-4592, 2007 WL 2070299, *7 (N.D. Cal. July 16, 2007). However, the Court grants Plaintiffs leave to replead the particulars of the false statements they claim were made in Forms 10-K405 and 10-K filings, from June 22, 2001, forward, based on claims not barred.

## B.  Particularized Pleading and Scienter

Plaintiffs allege that on July 23, 2002, ACS made a grant of 400,000 options to Rich, a grant of 600,000 options to Deason, a grant of 200,000 options to King, a grant of 75,000 options to Blodgett, and a grant of 75,000 options to Brophy.  Plaintiffs further allege that Defendants Deason, O'Neill, and Rossi, who served on the Compensation Committee at the time of the grants, acted with scienter in violating § 10(b).  To the extent Plaintiffs rely only on the Defendants' membership on the Committee to establish scienter, they have not sufficiently pleaded scienter.  *Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 797 (N.D. Tex. 2006) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004).  Plaintiffs must establish that each individual Defendant had the requisite state of mind, but not merely by relying on the positions held by the Defendants in the company.  *Id.* at 798; *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company.").  Therefore, the Court will grant Plaintiffs leave to amend in order to plead with particularity each individual Defendant's role on the Compensation Committee or other basis for finding that these Defendants acted with scienter in approving the option grants.

As for Rich, King, Blodgett, and Brophy, who all received the alleged backdated option grants dated July 23, 2002, Plaintiffs cannot establish the requisite scienter based only on their receipt of such grants.  Plaintiffs attempt to pair receipt with allegations of insider trading in order to satisfy the scienter prerequisite.  However, to establish scienter, insider trading must be in suspicious amounts, at suspicious times, and out of line with prior trading practices.  *Cent. Laborers' Pension Fund*, 497 F.3d at 552-53.  "Insider trading alone cannot create a strong inference of scienter, but it may meaningfully enhance the strength of the inference of scienter."  *Id.*  The Court "must analyze whether Plaintiffs have alleged a link between each Individual Defendant's alleged insider trading and his particular part in the alleged fraud."  *In re Blockbuster, Securities Litig.,* No. 03-0398, 2004 WL 884308, *18 (N.D. Tex. Apr. 26, 2004).  Plaintiffs generally plead, in chart form, the dates and amounts of the Individual

Defendants' alleged insider trading, but in the Court's view, the chart does not provide any basis for the Court to find the trading suspicious. The Court grants Plaintiffs leave to amend to plead insider trading as a basis for a strong inference of scienter as to these Defendants. In so doing, Plaintiffs must be mindful of the pleading requirements articulated in *Tellabs, supra.*

With regard to Forms 10-K405 and Forms 10-K filed after June 22, 2001, Plaintiffs allege that Deason, Rich, O'Neill, Rossi, and King signed all the forms; that Hortenstine, Kendall, Deckelman, and Bracken signed the forms in 2001 and 2002; and, that Kosberg, McCuistion, and Edwards signed the forms from 2003 to 2005. The fact that these Defendants signed the allegedly false or fraudulent documents constitutes a "specific factual allegation" that links these individuals to the statements at issue. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). However, the signatures of Deason, Rich, O'Neill, Rossi, King, Hortenstine, Kendall, Deckelman, Bracken, Kosberg, McCuistion, and Edwards on the Forms 10-K405 and Forms 10-K are not sufficient, by themselves, to establish scienter on behalf of those Defendants. *Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1018, 1027 (N.D. Tex. 2000) (finding complaint "deficient" as to scienter when plaintiffs appeared "to rely generally on these defendants' signatures on financial reports and their positions"); *see In re Michaels Stores, Inc. Sec. Litig.,* No. 03-0246, 2004 U.S. Dist. LEXIS 24919 (N.D. Tex. Dec. 10, 2004) (dismissing § 10(b) claim as to individual who signed documents but as to whom plaintiffs did not adequately plead state of mind); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1265-66 (11th Cir. 2006) (explaining that signed certification is probative of scienter only if plaintiffs plead facts indicating that the person signing the certification was severely reckless in certifying accuracy of financial statements); *Cent. Laborers' Pension Fund,* 497 F.3d at 555 (holding that a strong inference of scienter was proper only if the person signing the certification of the 10-K "had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions"). Though the Court questions whether Plaintiffs will be able to adequately plead scienter on behalf of

these individual Defendants, the Court will grant Plaintiffs leave to amend their Complaint to establish that each individual Defendant had the requisite state of mind.

However, since Plaintiffs have failed to show that Defendants Blodgett, Rexford, or Brophy signed any of the documents at issue or that they were otherwise responsible for the allegedly false or fraudulent statements contained in those documents, Plaintiffs' § 10(b) and Rule 10b-5 claims against those Defendants are dismissed.

## Section 14(a) Claims

Plaintiffs assert claims under § 14(a) against all the Defendants who remain parties to the case, alleging that the 1995–2005 proxy statements violated § 14(a) and Rule 14a-9 because they omitted material facts, "including the fact that certain of the defendants were causing ACS to engage in an option backdating scheme, a fact which defendants were aware of and participated in from at least 1995." Amended Complaint at ¶ 128. Plaintiffs plead that, in the exercise of reasonable care, Defendants should have known that the proxy statements were materially false and misleading and that the misrepresentations were material to Plaintiffs in voting on each proxy statement and were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, causing damages to the Company. *Id.* at ¶¶ 129–231. Plaintiffs specifically allege two kinds of false statements in the proxy statements: (1) that the stock options were priced at fair market value on the date of the grant and (2) that ACS followed and adhered to APB 25. *Id.* at ¶ 89.

Rule 14a-9 provides that "No solicitation subject to this regulation shall be made by means of any proxy statement . . . which, at the time . . . it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." An omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *General Elec. Co. v.*

*Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

A.  Statute of Repose

Like Plaintiffs' § 10(b) claims, the Court also finds that some of Plaintiffs' claims brought under § 14(a) are time-barred.  The *Lampf* "1-and-3" rule, providing a one-year statute of limitation and three-year statute of repose, applies to § 14(a) claims.  *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993); *In re Atmel Corp. Derivative Litig.*, No. 06-4592, 2007 WL 2070299, *8 (N.D. Cal. July 16, 2007).  The Court agrees with the recent decision of *In re ExxonMobil Corp. Securities Litigation,* 500 F.3d 189 (3d Cir. Nov. 20, 2007), that SOX does not extend limitations or repose for § 14(a) claims.  A claim based on dissemination of false financial statements accrues when the allegedly false or misleading statement was made.  *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 573 (D. N.J. 2002).  Therefore, all claims based on allegedly false or fraudulent proxy statements filed before June 21, 2003, are dismissed, as time-barred by the three-year statute of repose.

B.  Essential Link

Defendants argue that Plaintiffs have failed to state a claim because they have failed to show that the proxy statements were an essential link in accomplishment of the challenged corporate actions.  An action under § 14(a) must challenge "a transaction which was the subject of the proxy materials, such as approval of a merger agreement or the election of corporate directors."  *Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006).  Plaintiffs allege in their Amended Complaint that the "Proxy Statements were an essential link in the accomplishment of the continuation of defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers'

compensation and the Company's compensation policies." Amended Complaint at ¶ 130. This allegation is insufficient to state that an essential link exists.

The court in *General Electric Company v. Cathcart*, 980 F.2d 927 (3d. Cir. 1992), rejected an argument based on such a tenuous connection, holding that "the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss." 980 F.2d at 933; *see also In re VeriSign, Inc., Derivative Litig.,* No. 06-4165, 2007 WL 2705221 (N.D. Cal. Sept. 14, 2007)(holding that plaintiffs failed to allege an injury stemming directly from the transaction that was at immediate issue in the proxy, the election of directors). The Amended Complaint does not plead an essential link.

Although this Court has serious doubts that an essential link between the proxy statements and the injury caused by the backdating can be pleaded in good faith, the Court grants Plaintiffs a single opportunity to plead such a link, if they can in good faith do so. If Plaintiffs fail to sufficiently plead such a link, all of Plaintiffs' claims brought under § 14(a) will be dismissed.


## Section 20(a) Claims

Section 20(a) of the Exchange Act makes "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter . . . liable jointly and severally with and to the same extent as such controlled persons." 15 U.S.C. § 78t(a). Plaintiffs plead that Defendants Rich, Deason, Blodgett, King, Edwards, Rexford, and Brophy, "by virtue of their positions with ACS and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of ACS within the meaning of § 20(a) of the Exchange Act." Since controlling person liability is derivative of the claims discussed above, the Court will dismiss the § 20(a) claims only if it dismisses all other claims brought under the Exchange Act. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). Since it is premature to decide these claims now, the Court denies the motions to dismiss these claims,

without prejudice to their being reasserted against the Plaintiffs' to-be-filed Second Amended Complaint.

State Law Claims

Plaintiffs plead various state law claims in their Amended Complaint: demand for an accounting (Count V); intentional breach of fiduciary duty (Count VI); breach of fiduciary duty and/or aiding and abetting (Count VII); abuse of control (Count VIII); gross mismanagement (Count IX); constructive fraud (Count X); corporate waste (Count XI); unjust enrichment (Count XII); rescission (Count XIII); and breach of contract (Count XIV).

Defendant ACS argues that the Court should decline to exercise jurisdiction over the state law claims. Plaintiffs have requested leave to amend their Amended Complaint to allege diversity jurisdiction. Since the Court has limited discretion to decline to exercise jurisdiction over claims over which it has independent federal jurisdiction, the Court declines to now dismiss such claims. This position may be reasserted as to Plaintiffs' Second Amended Complaint.

Conclusion

The Court **DENIES** the Motions filed by Cerberus and Black (individually) as moot, given that Plaintiffs have on the record dismissed their claims against those Defendants. The Court **DENIES** Motions filed by Rich, King and Edwards to Dismiss Plaintiffs' Amended Complaint for failure to plead demand futility. The Court **GRANTS** the same Defendants' Motions to Dismiss Count IV of the Amended Complaint, and **DISMISSES** Plaintiffs' claims brought under § 16(a) of the Exchange Act. The Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims based on option grants dated March 9, 1995; March 8, 1996; April 7, 1997; May 18, 1998; October 8, 1998; September 13, 1999; and July 11, 2000. The Court **GRANTS** Defendants Blodgett, Rexford, and Brophy's Motions to Dismiss Plaintiffs' § 10(b) and Rule 10b-5 claims that are based on allegedly false Forms 10K-405 and

Forms 10-K. The Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' §14(a) and Rule 14a-9 claims based on allegedly false or fraudulent proxy statements filed before June 21, 2003. However, the Court **GRANTS** Plaintiffs leave to amend their Complaint (1) to plead the particular false statements that appear in filings made on or after July 22, 2001, and to show that those false statements are based on events that occurred within the five-year period thereafter; (2) to plead with particularity individual Defendants' roles on the Compensation Committee or otherwise in approving the option grants dated July 23, 2002; (3) to further detail alleged insider trading to establish a basis for scienter as to the Defendants who received allegedly backdated option grants dated July 23, 2002; (4) to plead with particularity scienter as to the Defendants who signed Forms 10-K405 and Forms 10-K which are the basis for claims which are not time-barred; (5) to allege the existence of an essential link between the proxy materials filed July 22, 2003, or after and the backdating; and (6) to allege diversity jurisdiction. The Court denies without prejudice Defendants' motions to dismiss Plaintiffs' § 20(a) claims and to have the Court refuse to exercise supplemental jurisdiction over Plaintiffs' state law claims.

By February 1, 2008, Plaintiffs shall file, if they choose, a Second Amended Complaint, as ordered herein, along with a red-lined copy, noting all changes in the Amended Verified Consolidated Shareholders Derivative Complaint. Any Motion to Dismiss the Second Amended Complaint must be filed by March 3, 2008. Responses are due on or before April 1, 2008. Any Replies are due on or before April 22, 2008. No changes other than those ordered or permitted herein may be made to the Amended Verified Consolidated Shareholders Derivative Complaint.

      **SO ORDERED.**

      **DATED**: December 13, 2007.

**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**