UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| In re AFFILIATED COMPUTER SERVICES DERIVATIVE LITIGATION | § Master File No. 3:06-cv-1110-O<br>§<br>§ ECF |
| This Document Relates To:<br><br>ALL ACTIONS. | §<br>§<br>§<br>§<br>§<br>§ |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement dated May 6th, 2009 (the "Stipulation"), is made and entered into by and among the following Settling Parties: (i) the Lead Plaintiffs (on behalf of themselves and derivatively on behalf of Affiliated Computer Services, Inc.), by and through their counsel in the Action; (ii) nominal defendant Affiliated Computer Services, Inc. ("ACS" or the "Company"); and (iii) the Special Litigation Committee ("SLC") of ACS, by and through its counsel. This Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof. Capitalized terms not otherwise defined shall have the meanings set forth in Section IV herein.

## I. PROCEDURAL HISTORY

This shareholders' derivative action was brought derivatively on behalf of ACS against certain former and current officers and directors for violations of the federal securities laws and supplemental state laws. Lead Plaintiffs alleged that tens of millions of dollars were diverted to the Defendants and others via the fraudulent backdating of stock options and that Defendants caused ACS to file false reports with the Securities and Exchange Commission ("SEC") and Internal Revenue Service. More specifically, Lead Plaintiffs allege that Defendants' backdating scheme occurred for over a decade, and involved more than 19 million backdated stock options, including six million to Defendants. Lead Plaintiffs allege that Defendants' misconduct caused ACS to report fictitious earnings for at least five years and allowed Defendants to sell over $240 million of their own ACS shares at inflated prices during the periods they were engaged in their unlawful conduct.

On December 13, 2007, the Court, in its Memorandum Opinion and Order granting in part and denying in part Defendants' motions to dismiss Plaintiffs' Amended Complaint, ruled that the Individual Defendants who sat on the ACS Board at the time the Federal Action was filed were incapable of considering the claims asserted in this case in an impartial manner and thus a pre-suit demand on the Board to address these claims would be futile. Lead Plaintiffs were given leave to

STIPULATION OF SETTLEMENT – Page 1

amend in certain respects, and on February 1, 2008, Lead Plaintiffs filed their Second Amended Complaint (the "SAC").

On March 17, 2008, Defendants filed their motions to dismiss the SAC, and Lead Plaintiffs filed their opposition on April 15, 2008. On November 17, 2008, the Court issued an order denying Defendants' motions to dismiss, and on December 15, 2008, issued an order setting a schedule for discovery, certain proceedings, and trial.

On May 22, 2008, the outside directors of the ACS Board of Directors appointed a Special Litigation Committee ("SLC"), and granted the SLC the exclusive authority "to determine what action the Company should take with respect to the Derivative [Actions]" and any other matter arising out of allegations of stock option backdating. The SLC was empowered to seek to stay the Derivative Actions, or to prosecute, dismiss or compromise the claims asserted therein. The SLC engaged Ropes & Gray LLP as its independent counsel and retained Navigant Consulting, Inc. to advise on financial and related matters. On October 21, 2008, the SLC approved the settlement between the parties to the Texas Action and the Delaware Action and on November 20, 2008, the court in the Texas Action granted preliminary approval to that settlement and ordered notice of the settlement to ACS shareholders. Notice was sent to ACS shareholders pursuant to the Texas court's order on December 10, 2008.

Lead Plaintiff Bennett Ray Lunceford filed a timely objection in the Texas Action (the "Objection"). On February 4, 2009, the parties to the Texas Action and the Delaware Action executed a Stipulation of Settlement that provides for the compromise and dismissal of those Actions, on the terms set forth therein. The court in the Texas Action has scheduled a final settlement approval hearing for May 18, 2009.

Counsel for Lead Plaintiffs in the Federal Action have conducted expedited document and deposition discovery related to the motion to approve the settlement of the Texas Action. Lead

STIPULATION OF SETTLEMENT – Page 2

Plaintiffs' Counsel have received and reviewed over one million pages of documents, including ACS's public filings, documents produced to the SEC, discovery conducted in the Texas and Delaware Action, and other documents reviewed by the SLC. Lead Plaintiffs' Counsel have also conducted the depositions of SLC members Paul Sullivan, Kurt Krauss, Ted Miller, and Frank Varasano and Navigant principal Michael Emmert and have retained experts in multiple fields to assist them with their objection to the settlement of the Texas Action.

The issuers to ACS of certain Directors' and Officers' Liability Insurance Policies (the "Insurers") contested their obligation to provide coverage for over $78,000,000 in certain legal expenses and settlement expenses incurred by one or more ACS insureds in connection with the Derivative Actions and which ACS has submitted to the Insurers as Loss under the insurance policies issued by the Insurers (the "Insurance Dispute").

Lead Plaintiffs' Counsel, counsel for ACS and its SLC, and counsel for the Insurers engaged in extensive arm's length negotiations relating to the Federal Action, the Lead Plaintiffs' Objection, and the Insurance Dispute in a mediation conducted by Hon. Layn R. Phillips (U.S.D.J.Ret.). As part of such mediation, Lead Plaintiffs insisted that they would not settle the Federal Action and the Objection if the Insurers would not agree to make a significant payment to ACS. The mediation resulted in the joint resolution of the Federal Action, the Objection and the Insurance Dispute, which included the agreement in principle by the Insurers to pay $30 million to ACS. On April 27, 2009, ACS and Lead Plaintiffs entered into a Memorandum of Understanding ("MOU") memorializing the settlement.

## II. DENIALS OF WRONGDOING AND LIABILITY

The Individual Defendants have denied and continue to deny each and all of the claims and contentions alleged in the Federal Action. The Individual Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of or relating in any

STIPULATION OF SETTLEMENT – Page 3

way to the events, conduct, statements, acts or omissions alleged, or that could have been alleged, in the Federal Action. The Individual Defendants also expressly have denied and continue to deny, *inter alia*, the allegations that the Lead Plaintiffs, ACS or its shareholders have suffered damage, or that the Lead Plaintiffs, ACS or its shareholders have been harmed in any way by the conduct alleged in the Federal Action. The Individual Defendants have further asserted that at all times they acted in good faith, and in a manner they reasonably believed to be and that was in the best interests of ACS and its shareholders.

ACS has concluded that further conduct of the Federal Action would be protracted and expensive, and that it is desirable that the Federal Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. ACS is entering into this Stipulation because the proposed settlement would eliminate the burden and expense of further litigation, and because settlement provides substantial benefits and is in the best interests of ACS and its shareholders.

## III. LEAD PLAINTIFFS' CLAIMS AND THE BENEFITS OF THE SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Federal Action have merit. However, the Lead Plaintiffs recognize and acknowledge the expense and length of continued legal proceedings necessary to prosecute the Federal Action through trial and the appeals process. Lead Plaintiffs' Counsel have taken into account the uncertain outcome and the risk of any litigation, especially in complex litigations such as the Federal Action, as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs' Counsel also are mindful of the problems of proof and possible defenses to the claims asserted in the Federal Action. Lead Plaintiffs' Counsel believe that the settlement set forth in this Stipulation confers substantial benefits upon ACS and its shareholders. Based upon their evaluation, Lead Plaintiffs have determined that the settlement set forth in this Stipulation is in the best interests of the Lead Plaintiffs, ACS and its shareholders.

STIPULATION OF SETTLEMENT – Page 4

## IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Lead Plaintiffs (for themselves and derivatively on behalf of ACS), ACS and the SLC, by and through their respective counsel, that, subject to all necessary court approvals, and in exchange for the consideration set forth below, the Federal Action and the Released Claims shall be fully, finally and forever compromised, settled and released, and the Federal Action shall be dismissed with prejudice and with full preclusive effect as to all Settling Parties and all parties to the lawsuit, upon and subject to the terms and conditions of this Stipulation, as follows.

### 1. Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1 "Defendants" means the Individual Defendants and nominal party Affiliated Computer Services, Inc.

1.2 "Effective Date" means the first date by which all of the events and conditions specified in ¶6.1 hereof have occurred or have been met.

1.3 "Federal Action" means the consolidated shareholder derivative action in the United States District Court for the Northern District of Texas captioned *In re Affiliated Computer Services Derivative Litigation.*, Master File No. 3:06-cv-1110-M

1.4 "Delaware Action" means the action pending in the Delaware Court of Chancery captioned *Brandin, et al. v. Deason, et al.*, C.A. 2123-VCL.

1.5 "Derivative Actions" means each of the Federal Action, the Delaware Action, and the Texas Action.

1.6 "Lead Plaintiffs' Counsel" means Coughlin Stoia Geller Rudman & Robbins LLP.

1.7 "Final" means the first date by which a Judgment that has not been reversed, vacated, or modified in any way is no longer subject to appellate review, either because of disposition on

STIPULATION OF SETTLEMENT – Page 5

appeal and conclusion of the appellate process, or because of expiration without action of the time period for seeking appellate review. More specifically, it is the circumstance in which: (i) no appeal has been filed and the time period has expired for any notice of appeal to be timely filed in the Federal Action; or (ii) an appeal has been filed and the court of appeals has either affirmed the Judgment or dismissed that appeal, and the time period for any reconsideration or further appellate review has expired; or (iii) a higher court has granted further appellate review and that court has either affirmed the underlying Judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal. Any proceeding or order, or any appeal or petition for review pertaining solely to any claim for attorneys' fees and expenses in the Federal Action shall not in any way delay or preclude the Judgment from becoming Final within the meaning of this paragraph.

1.8     "Individual Defendants" means Darwin Deason, Jeffrey Rich, Joseph O'Neill, Frank Rossi, J. Livingston Kosberg, Mark King, Lynn Blodgett, Dennis McCuistion, Henry Hortenstine, William L. Deckelman, Jr., Warren Edwards, John Rexford and John Brophy.

1.9     "Judgment" means the judgment to be entered by the Court, substantially in the form attached hereto as Exhibit B.

1.10    "Notice" means that notice of the settlement to be provided to the Company's shareholders, at the Company's expense, in a form and manner agreed upon by the Settling Parties, approved by the Court, and consistent with the requirements of Federal Rule of Civil Procedure 23.1, as referenced in ¶3.2 hereof.

1.11    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, parents, subsidiaries, representatives, or assigns.

1.12   "Lead Plaintiffs" means Alaska Electrical Pension Fund and Bennett Ray Lunceford.

1.13   "Plaintiffs' Counsel" means any counsel who have appeared on behalf of any plaintiff in the Federal Action.

1.14   "Related Parties" means each of a Defendant's past, present or future directors, officers, employees, partners, members, principals, agents, insurers, attorneys, accountants, legal representatives, predecessors, successors, parents, subsidiaries, divisions, assigns, related or affiliated entities, spouses, heirs, and any members of his or her immediate family, or any trust of which that person is a settler or which is for the benefit of that person and/or member(s) of that person's family.

1.15   "Released Claims" shall collectively mean all claims for relief (including "Unknown Claims" as defined in ¶1.18 hereof), or debts, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that could have been asserted by the Lead Plaintiff, on behalf of ACS, or by ACS, against each and every one of the Released Persons (including, without limitation, claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability, negligence, negligent supervision, gross negligence, intentional conduct, indemnification, breach of duty of care and/or breach of duty of loyalty or good faith, fraud, misrepresentation, unjust enrichment, constructive trust, breach of fiduciary duty, negligent misrepresentation, unfair competition, insider trading, professional negligence, mismanagement, corporate waste, breach of contract, or violations of any state or federal statutes, rules or regulations) that were alleged in the Derivative Actions or that arise from or relate to the matters or occurrences that were or could have been alleged in the Derivative Actions, including any claims related to the public disclosures relating to stock option grants and purchases or the transactions referenced therein, however described. Notwithstanding the foregoing, Released Claims shall not include any claims to enforce the terms of

STIPULATION OF SETTLEMENT – Page 7

this Stipulation. In addition, nothing set forth herein shall constitute a release by Defendants of any insurer of any claim arising out of the rights, remedies, duties or obligations provided for in any insurance policy or agreement, but unless otherwise specified in this Stipulation, the Effective Date shall not be contingent upon the resolution of such claim. Nothing set forth herein shall constitute a release by or among the Company and the Individual Defendants of the rights and obligations relating to indemnification or advancement of defense costs arising from the Company's certificate of incorporation, bylaws, Delaware law, or any indemnification agreement or similar agreement, nor of any obligation relating to any current stock option or similar agreement concerning employment or compensation.

1.16   "Released Persons" means each and all of the Individual Defendants, ACS and their Related Parties.

1.17   "Settling Parties" means, collectively, each of ACS, the SLC, and each of the Lead Plaintiffs on behalf of themselves, ACS and its shareholders.

1.18   "Texas Action" means the consolidated shareholder derivative action in the District Court of Dallas County, Texas, 193rd Judicial District, captioned *In Re Affiliated Computer Services, Inc. Derivative Litigation*, Cause No. 06-03403.

1.19   "Unknown Claims" means any Released Claim that Lead Plaintiffs, ACS or any ACS shareholders do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, including claims which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement. In this regard, with respect to the Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs and ACS shall expressly waive, and each ACS shareholder shall be deemed to have and by operation of the Judgment shall have expressly waived, the provisions, rights and benefits conferred by §1542 of the California Civil

Code, and by any law of any state or territory of the United States or any other state, sovereign or jurisdiction, or any principle of common law that is similar, comparable or equivalent to §1542 of the California Civil Code, which provides:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

The Lead Plaintiffs, ACS and ACS shareholders may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but, upon the Effective Date, each Lead Plaintiff and ACS shareholder shall expressly settle and release, and each ACS shareholder shall be deemed to have and by operation of the Judgment shall have fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

The Settling Parties acknowledge, and each ACS shareholder shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and agreed upon with the express intention of releasing Unknown Claims, and is a key element of the settlement of which this release is a part.

## 2. Settlement Consideration

2.1   The Insurers have agreed to pay to ACS $30 million in cash following completion of a mediation and, if necessary, a binding determination by the mediator of allocation among the Insurers, full policy releases and completion of final documentation among the Insurers and ACS. The Insurers have agreed that this binding determination will be made no later than May 12, 2009, if

STIPULATION OF SETTLEMENT – Page 9

the above-referenced mediation has not resulted in an allocation agreement by that date, and payment will be made on or before June 11, 2009. The Settling Parties agree that the Federal Action and the efforts of Lead Plaintiffs' Counsel were material factors and instrumental in obtaining the $30 million payment to ACS from the Insurers.

### 3. Settlement Procedure

3.1 Promptly after the full execution of this Stipulation, the Settling Parties shall submit the Stipulation and its Exhibits to the Court and apply for an order substantially in the form of Exhibit A hereto, requesting preliminary approval of the settlement set forth in this Stipulation (the "Preliminary Approval Order"). Upon the filing of the application for the Preliminary Approval Order, all proceedings, pending deadlines and discovery in the Federal Action will be stayed.

3.2 Lead Plaintiffs will also move the Court to approve notice of the settlement to ACS shareholders substantially in the form of Exhibit A-1 to the Preliminary Approval Order. Notice of the settlement shall be provided to the Company's shareholders, at the Company's expense, in a form and manner agreed upon by the Settling Parties, approved by the Court, and consistent with the requirements of Federal Rule of Civil Procedure 23.1.

3.3 Lead Plaintiffs will request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the settlement of the Federal Action as set forth herein. At or after the Settlement Hearing, Lead Plaintiffs will also request the Court to approve payment of Plaintiffs' Counsel's attorneys' fees and expenses in the amount negotiated by the parties as set forth in ¶5.1 hereof.

3.4 Pending the Effective Date, the Lead Plaintiffs and Plaintiffs' Counsel shall not commence or participate in any other actions or proceedings asserting any of the Released Claims, against any of the Released Persons, that are encompassed by the settlement.

3.5 Within three (3) calendar days of the entry of the Preliminary Approval Order, and subject to Section VI hereof, Lead Plaintiff Bennett Ray Lunceford, for himself and on behalf of all Lead Plaintiffs in the Federal Action, shall withdraw his Objection to the proposed settlement and dismissal of the derivative action captioned *In re Affiliated Computer Services, Inc. Derivative Litigation*, Cause No. 06-03403, in the 193rd Judicial District of Texas, Dallas County, Texas (the "Texas Action").

3.6 The Settling Parties agree that none of them will take any action, file any document or otherwise contend that the entry of an order and final judgment in either the Texas Action or the Delaware Action bars the prosecution of the Federal Action or the viability of the claims asserted therein or entry of the Judgment for any reason, including on grounds of *res judicata*, any principle of issue or claim preclusion, or otherwise.

### 4. Mutual Releases

4.1 Upon the Effective Date, the Lead Plaintiffs (acting on their own behalf and derivatively on behalf of ACS), ACS, and each ACS shareholder shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Claims, including Unknown Claims, against the Released Persons. Nothing herein shall in any way impair or restrict the rights of any of the Settling Parties to enforce the terms of this Stipulation.

4.2 Upon the Effective Date, ACS shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Lead Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims. Nothing herein shall in any way impair or restrict the rights of the Settling Parties to enforce the terms of this Stipulation.

## 5. Plaintiffs' Counsel's Attorneys' Fees and Expenses

5.1 Following agreement on all substantive terms of the Settlement, and as a result of arm's length negotiations before an experienced mediator, ACS has agreed to cause to be paid (as set forth in ¶5.2 below) Plaintiffs' Counsel's attorneys' fees and expenses in an aggregate cash amount of the value of 180,000 shares of ACS common stock (determined as of the close of the market) on whichever is higher of either (1) the date the MOU was executed, (2) the date of the public announcement of the settlement, via a Form 8-K filed with the SEC, if it is announced before the close of the market, or (3) the following trading date after the announcement, if the announcement is made after the close of the market.

5.2 On behalf of and for the benefit of ACS, and subject to court approval, the Company will pay the above amount to Plaintiffs' Counsel three (3) business days after the issuance and entry of an Order finally approving the settlement of the Federal Action, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, but under no circumstances shall this payment be made any earlier than June 15, 2009. Such payment shall be made to Coughlin Stoia Geller Rudman & Robbins LLP, as receiving agent for all Plaintiffs' Counsel. This amount shall be paid subject to Plaintiffs' Counsel's joint and several obligation to make appropriate refunds or repayments of the principal amount plus interest at the federal post-judgment interest rate promptly to the payor, if and when (as a result of any further order of the Court, appeal, further proceedings or remand, or successful collateral attack) the settlement is not approved or the State Stipulation is not approved in either the Texas Action or the Delaware Action, or the Judgment is reversed or materially modified under any appeal.

5.3 Coughlin Stoia Geller Rudman & Robbins LLP shall determine in good faith the allocation of such fees and expenses to Plaintiffs' Counsel, based upon each counsel's contribution

STIPULATION OF SETTLEMENT – Page 12

to the initiation, prosecution and/or resolution of the Federal Action. Defendants shall have no responsibility for, and no liability whatsoever with respect to, the allocation of such fees and expenses among Plaintiffs' Counsel.

5.4 Except as otherwise provided herein, each of the Settling Parties shall bear its own costs and expenses.

### 6. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

6.1 The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

(a) the Court has entered the Judgment dismissing the Federal Action with prejudice;

(b) the settlements in the Texas Action and the Delaware Action have been approved, and the Texas Action and the Delaware Action have been dismissed with prejudice;

(c) ACS has paid Plaintiffs' Counsel's attorneys' fees and expenses in the negotiated amount; and

(d) the Judgment in the Federal Action has become Final.

6.2 If any of the conditions specified in ¶6.1 are not met, then this Stipulation shall be deemed canceled and terminated unless Lead Plaintiffs' Counsel and counsel for ACS mutually agree in writing to proceed with this Stipulation.

6.3 If for any reason the Effective Date does not occur, or if this Stipulation is in any way canceled or terminated, or if any rulings in the Federal Action related to this Stipulation are successfully attacked collaterally, then any of the Settling Parties may terminate the MOU and this Stipulation and withdraw from the proposed settlement by providing written notice of such action to counsel for all of the other Settling Parties within thirty (30) days after the failure of such condition. Upon such termination by a Settling Party (i) the payments to Plaintiffs' Counsel pursuant to ¶5.2,

STIPULATION OF SETTLEMENT – Page 13

plus any accrued interest, shall be returned to the payor within five (5) business days of the event that triggered the repayment obligation; and (ii) the Settling Parties shall be restored to their respective positions as of the date immediately preceding the full execution of the MOU. In such event, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in the Federal Action or in any other proceedings for any purpose, and any Judgment or other order entered in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

### 7. Miscellaneous Provisions

7.1 The Settling Parties (i) acknowledge that it is their intent to consummate this Stipulation and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Stipulation.

7.2 The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Federal Action. The settlement compromises claims that are contested, and shall not be deemed an admission by any Settling Party as to the merits of any claim, allegation or defense. ACS agrees that the claims are being settled voluntarily after consultation with competent legal counsel and an experienced mediator. The Settling Parties will jointly request that the Judgment contain a finding that during the course of the Federal Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

7.3 Neither the Stipulation nor the settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the settlement: (i) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Settling Parties as a presumption, a concession or an admission of, or evidence of, any fault, wrongdoing or liability of

STIPULATION OF SETTLEMENT – Page 14

the Defendants or of the validity of any Released Claims; or (ii) is intended by the Settling Parties to be offered or received as evidence or used by any other person in any civil, criminal, administrative, or other proceeding whatsoever, including before any court, administrative agency or other tribunal. The Released Persons may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.4     The Settling Parties agree that any respective statements or public disclosures concerning the Federal Action, this Stipulation, or the settlement will not disparage any Settling Party, or their counsel.

7.5     ACS will obtain agreements from the Individual Defendants that they will not take any action adverse to or inconsistent with the proposed settlement and Stipulation unless and until such time that the Federal court denies the proposed settlement, if such event occurs. Additionally, prior to June 16, 2009, ACS will obtain covenants from the Individual Defendants stating that upon settlement of any derivative claims against them becoming final, they will not sue the Lead Plaintiffs or Plaintiffs' Counsel for anything relating in any way to, or in connection with the initiation, prosecution, assertion, settlement, or resolution of the Federal Action or the Released Claims, and that each of the Released Persons shall be barred and enjoined from prosecuting any such claims, provided, however, that nothing herein shall in any way impair or restrict the rights of any party to enforce the terms of this Stipulation.

7.6     Except to the extent disclosure may be required by applicable law or any applicable securities exchange, no Settling Party shall issue a press release or other public statement regarding this Stipulation, the Settlement, or the Federal Action without providing all other Settling Parties

STIPULATION OF SETTLEMENT – Page 15

with five (5) business days' advance written notice of the proposed statement and an opportunity to make a good faith objection thereto. In the event of objection by a Settling Party, the reason for the objection must be submitted in writing, and the proposed public statement shall not be issued, provided however that disputes concerning proposed public statements may be referred to the Hon. Layn R. Phillips (U.S.D.J.Ret.) or another qualified neutral agreed upon by the disputing parties, who shall have the authority to determine whether the proposed public statement, or any alternative statement proposed by any other Settling Party in connection with such dispute, may be issued.

7.7 The Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.8 The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

7.9 This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties or inducements have been made to any Settling Party concerning the Stipulation or any of its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

7.10 In construing the Stipulation, no presumption shall be made against any of the Settling Parties on the basis that it was a drafter of the Stipulation.

7.11 Lead Plaintiffs represent and warrant that they have not assigned any rights, claims, or causes of action that were asserted or could have been asserted in connection with, under or arising out of any of the claims being settled or released herein.

7.12 Plaintiffs' Counsel are expressly authorized by the Lead Plaintiffs, derivatively on behalf of ACS, to take all appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms, and also are expressly authorized by the Lead Plaintiffs to enter

into any modifications or amendments to this Stipulation which they deem appropriate on behalf of the Lead Plaintiffs.

7.13 Each counsel or other Person executing this Stipulation or its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

7.14 The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of counterparts, either originally executed or copies thereof, shall be filed with the Court.

7.15 The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties and the Released Persons.

7.16 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation.

7.17 This Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Texas, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Texas without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed by their duly authorized attorneys and dated May 4, 2009.

                                 KENDALL LAW GROUP, LLP
                                 JOE KENDALL
                                 State Bar No. 11260700
                                 HAMILTON P. LINDLEY
                                 State Bar No. 24044838

                                 */s/ Joe Kendall /BCG*
                                 JOE KENDALL

STIPULATION OF SETTLEMENT – Page 17

3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: 214/744-3000
214/744-3015 (fax)
Liaison Counsel

COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART
JOHN J. RICE
ANNE L. BOX
BENNY C. GOODMAN III
LUCAS F. OLTS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: 610/225-2677
610/225-2678 (fax)

Additional Counsel for Plaintiffs

AKIN GUMP STRAUSS
       HAUER & FELD LLP
ORRIN L. HARRISON
DAVID R. MCATEE
LISA GALLERANO
M. SCOTT BARNARD

_____
                    ORRIN L. HARRISON

1700 Pacific Avenue
Suite 4100
Dallas, TX 75201-4618
Telephone: 214/969-2800
214/969-4343 (fax)

STIPULATION OF SETTLEMENT – Page 18

Attorneys for Nominal Party Affiliated Computer Services, Inc.

ROPES & GRAY LLP
JOHN D. DONOVAN, JR.

_____
JOHN D. DONOVAN, JR.
One International Place
Boston, MA 02110-2624
Telephone: 617/951-7000
617/951-7050 (fax)

Attorneys for the Special Litigation Committee

S:\Settlement\Affiliated Computer Deriv.set\stp00059274 (1).doc

STIPULATION OF SETTLEMENT – Page 19